IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-408-D

| | | |
|---|---|---|
| JEANETTE TILLERY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | **ORDER** |
| WAKEMED HEALTH & HOSPITALS, | ) | |
| THE BOARD OF DIRECTORS OF | ) | |
| WAKEMED, THE FINANCE COMMITTEE | ) | |
| OF WAKEMED, and JOHN AND JANE | ) | |
| DOES 1-30, | ) | |
| | ) | |
| Defendants. | ) | |

On July 10, 2025, Jeanette Tillery ("plaintiff" or "Tillery") filed a putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., against WakeMed Health & Hospitals ("WakeMed"), WakeMed's Board of Directors (the "Board"), WakeMed's Finance Committee (the "Committee"), and John and Jane Does 1–30 (collectively, "defendants") [D.E. 1]. On September 22, 2025, defendants moved to dismiss Tillery's complaint [D.E. 11] and filed a memorandum in support [D.E. 12]. On October 23, 2025, Tillery responded in opposition [D.E. 17]. On November 17, 2025, defendants replied [D.E. 18]. As explained below, the court grants defendants' motion to dismiss Tillery's complaint and dismisses with prejudice Tillery's complaint.

I.

WakeMed is a healthcare services company based in Raleigh, North Carolina, with over 12,000 employees. See Compl. [D.E. 1] ¶ 8. WakeMed sponsors the WakeMed Retirement Savings Plan, a defined contribution, individual account retirement savings plan (the "Plan") for

its employees.  See id. at ¶¶ 2, 11, 28; 29 U.S.C. § 1002(16)(B); see also [D.E. 12-1, 12-2, 12-3, 12-4].[1]  The Committee administrated the Plan.  See Compl. at ¶ 11.  Tillery worked for WakeMed and participated in the Plan through 2022.  See id. at ¶ 13.

When an employee participates in the Plan, the employee contributes money to an account.  See id. at ¶ 31.  The employee's contributions vest (i.e., cannot be forfeited) immediately.  See id. at ¶¶ 31–32.  WakeMed may contribute to the employee's account through matching and nonelective contributions, but the Plan does not require it to make any contributions.  See [D.E. 12-1] 5–6; [D.E. 12-2] 14, 20; [D.E. 12-3] 14, 20 [D.E. 12-4] 14–15.  WakeMed's contributions to an employee's account vest after three years.  See Compl. at ¶¶ 31–32.  If an employee leaves WakeMed before three years, the employee forfeits the contributions that WakeMed made to that employee's account.  See id.  These funds are referred to as "forfeitures."  See, e.g., 29 U.S.C. § 1002(34).

During the relevant period, four Plan documents governed the Plan.  The first Plan document, effective from August 7, 2012, through December 31, 2019, see [D.E. 12-1] 3, provided that the Finance Committee "shall use" forfeitures to restore previously forfeited funds to a participant's account under certain circumstances, and "shall use any remaining Forfeitures to fund Matching Contributions and Nonelective Contributions."  Id. at 8; see also id. at 6 (providing discretionary funding of matching and nonelective contributions via "an amount equal to the total" matching and nonmatching contributions, respectively, "for all Participants, less any available Forfeitures").  The second and third Plan documents, collectively effective from January 1, 2020, through September 6, 2023, each provided that WakeMed "may decide in its discretion how to

---

[1] The plan is a "403(b)" plan, akin to a 401(k) plan for employees of charitable, tax-exempt entities.  See IRC 403(b) Tax-Sheltered Annuity Plans, http://irs.gov/retirement-plans/irc-403b-tax-sheltered-annuity-plans (last visited Jan. 15, 2025).

2

treat forfeitures under the Plan." [D.E. 12-2] 24; [D.E. 12-3] 24. The fourth Plan document, effective since September 7, 2023, provides that the Committee will allocate forfeitures to reduce the nonelective contributions made by defendants, reduce the matching contributions made by defendants, or pay reasonable Plan expenses. See [D.E. 12-4] 16. Every relevant Plan document made participants responsible for paying Plan expenses. See [D.E. 12-1] 10; [D.E. 12-2] 12; [D.E. 12-3] 12; [D.E. 12-4] 9–10.

In every relevant year, defendants used some, but not all, of the forfeitures to pay matching and nonelective contributions. See Compl. at ¶¶ 33, 35–42 Participants paid the Plan expenses, which totaled $1,152,673 in 2019, $1,169,432 in 2020, $873,032 in 2021, $974,904 in 2022, and $565,448 in 2023. See id. at ¶¶ 30, 35–40, 61, 71. The year-end forfeiture balances were $62,500 in 2019, $47,400 in 2020, $17,700 in 2021, $79,800 in 2022, and $6,692,000 in 2023. See id. at ¶¶ 35–40.[2]

On July 10, 2025, Tillery filed a putative class action under ERISA, 29 U.S.C. §§ 1001 et seq., against defendants. See [D.E. 1]. On September 22, 2025, defendants moved to dismiss Tillery's complaint and filed a memorandum in support. See [D.E. 11, 12]. On October 23, 2025, Tillery responded in opposition. See [D.E. 17]. On November 17, 2025, defendants replied. See [D.E. 18].

Tillery pleads seven claims concerning WakeMed's decision not to use forfeitures to pay Plan expenses. Tillery alleges defendants violated ERISA's duty of loyalty (claim one), duty of prudence (claims two and three), anti-inurement provision (claim four), and prohibited transactions provision (claims five and six). See Compl. at ¶¶ 55–112. Tillery also alleges that the Company

---

[2] The complaint includes this figure of $6,692,000 for 2023. See Compl. at ¶ 40. The complaint fails to explain the large discrepancy between the alleged forfeiture balance in 2023 and the other years.

3

and Board Defendants violated their duty to monitor the Committee (claim seven). See Compl. at ¶¶ 113–21.

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation and citation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (citation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

4

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (citation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## A.

Defendants make two preliminary arguments concerning Tillery's ERISA fiduciary duty claims. First, defendants argue that Tillery seeks to recover a benefit greater than she is entitled to under the Plan, which contradicts the Plan documents and ERISA principles. See [D.E. 12] 15–18; [D.E. 18] 7–8. Second, defendants argue that Tillery's claims contradict the settled understandings of the Treasury Department and Congress concerning the use of forfeitures to fund employer contributions. See [D.E. 12] 18–22. Tillery responds that she does not seek an extra benefit but rather claims harm from defendants' alleged failure to abide by their fiduciary duties in making discretionary choices. See [D.E. 17] 8–9.

As for the first argument, ERISA seeks to protect beneficiaries of employee benefit plans. See Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley

5

Inv. Mgmt. Inc. (St. Vincent), 712 F.3d 705, 715 (2d Cir. 2013); DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 417 (4th Cir. 2007). ERISA requires that every "employee benefit plan shall be established and maintained" under "a written instrument," 29 U.S.C. § 1102(a)(1), and fiduciaries must follow the governing plan documents and instruments "insofar as such documents and instruments are consistent with" ERISA's other provisions. Id. § 1104(a)(1)(D); see Wright v. Or. Metallurgical Corp., 360 F.3d 1090, 1100 (9th Cir. 2004); Hutchins v. HP Inc. (Hutchins I), 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024). Thus, ERISA's statutory scheme "is built around reliance on the face of written plan documents" to ensure its "principal function" of "protect[ing] contractually defined benefits." U.S. Airways, Inc. v. McCutchen, 569 U.S. 88, 100–01 (2013) (cleaned up).

ERISA is agnostic concerning the substantive benefits that employers provide. See, e.g., Retail Indus. Leaders Ass'n v. Fielder, 475 F.3d 180, 190 (4th Cir. 2007) ("[ERISA] does not mandate that employers provide specific employee benefits . . . ." (citation omitted)); Loomis v. Exelon Corp., 658 F.3d 667, 671 (7th Cir. 2011) ("ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants."), abrogated on other grounds by Hughes v. Nw. Univ., 63 F.4th 615 (7th Cir. 2023); Hutchins v. HP Inc. (Hutchins II), 767 F. Supp. 3d 912, 921–22 (N.D. Cal. 2025), appeal filed, No. 25-826 (9th Cir. Feb. 7, 2025); cf. Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995). "Nothing in ERISA requires employers to establish employee benefits plans" or "mandate[s] what kind of benefits employers must provide if they choose to have such a plan." Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996). Instead, ERISA imposes fiduciary duties and other requirements that bind fiduciaries as they perform their duties under the plan. See 29 U.S.C. § 1001(b). These duties and requirements ensure that the participants receive "the full benefit guaranteed to them by the plan documents." Hutchins II, 767 F. Supp. 3d at 922.

As for the second argument, defendants identify regulations, proposed regulations, and legislative history documents which defendants argue approved the use of forfeitures to reduce employer contributions. See [D.E. 12] 18–22; Hutchins II, 767 F. Supp. 3d at 922–23; Polanco v. WPP Grp. USA, Inc., 2025 WL 3003060, at *4–5 (S.D.N.Y. Oct. 27, 2025) (unpublished) ("In the plaintiffs' view, Congress and the Treasury Department have blessed plans that let fiduciaries choose how to use forfeitures, but ERISA nonetheless prohibits fiduciaries from exercising that choice."). For instance, the Treasury Department's proposed regulations would permit forfeitures to be used "(1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants' accounts in accordance with the plan terms." Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282-01, 12283 (Feb. 27, 2023) (to be codified at 26 C.F.R. § 1.401-7). Defendants also identify tax code provisions which prohibit using tax-qualified plan assets for "purposes other than for the exclusive benefit of" participants and beneficiaries, 26 U.S.C. § 401(a)(2), and a regulation which, in the context of pension plans, provides that forfeitures "must be used as soon as possible to reduce the employer's contributions under the plan." 26 C.F.R. § 1.401-7(a).

The court declines to rely on defendants' preliminary arguments to dismiss the complaint. First, whether the Plan permits defendants' actions is not dispositive because fiduciary duties "trump[] the instructions of a plan document." Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 421 (2014); see 29 U.S.C. § 1104(a)(1)(D). Second, proposed regulations lack the force of law, enacted regulations interpreting law do not bind the court, and legislative history documents

7

are, at best, minimally persuasive evidence of congressional intent.[3] Accordingly, the court analyzes each claim in the complaint.

1.

In claim one, Tillery alleges that defendants breached the duty of loyalty and prudence by using forfeitures to reduce their future Plan contributions. See Compl. at ¶¶ 34–35, 55–65. ERISA's duty of loyalty demands that fiduciaries act "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i)–(ii); see Cunningham v. Cornell Univ., 604 U.S. 693, 696 (2025); Reetz v. Aon Hewitt Inv. Consulting, Inc., 74 F.4th 171, 181 (4th Cir. 2023); DiFelice, 497 F.3d at 418–19; Polanco, 2025 WL 3003060, at *1. A fiduciary's duty of loyalty is an absolute command to exclude "all selfish interest." Reetz, 74 F.4th at 181. The fiduciary must "make any decisions in a fiduciary capacity with an eye single to the interests of the participants and beneficiaries." DiFelice, 497 F.3d at 418–19. "To state a claim for breach of fiduciary duty under ERISA, the plaintiff[] must allege that (1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached [its] fiduciary duty." Polanco, 2025 WL 3003060, at *3 (cleaned up); see Albert v. Oshkosh Corp., 47 F.4th 570, 579 (7th Cir. 2022); Kendall v. Pharm. Prod. Dev., LLC, No. 7:20-CV-71, 2021 WL 1231415, at *3 (E.D.N.C. Mar. 31, 2021) (unpublished). The parties dispute only whether Tillery plausibly alleges breach of the fiduciary duties of loyalty and prudence.

Tillery alleges that defendants breached the duty of loyalty because using forfeitures to pay for employer contributions was not "solely in the interest of Plan participants" and a "fiduciary

---

[3] These sources are, however, relevant to the duty of prudence inquiry as evidence of the circumstances in which defendants acted.

acting solely in the interest of the Plan participants would have allocated forfeitures to pay Plan expenses as directed by the Plan document." Compl. at ¶¶ 61–62. Tillery argues that she adequately pleaded breach of the duty of loyalty because the facts alleged are "more consistent with the fiduciaries prioritizing the interests of the company over those of the participants, rather than simply failing to act in the participant's exclusive interest." [D.E. 17] 17.

Most courts have rejected duty of loyalty claims concerning forfeitures, reasoning that "[w]hen (1) a plan document gives a plan fiduciary discretion in how to use forfeitures and (2) participants otherwise receive everything guaranteed by the plan's terms, plan fiduciaries do not violate their duty of loyalty merely by declining to use forfeitures to cover administrative expenses." Polanco, 2025 WL 3003060, at *4; see Sievert v. Knight-Swift Transp. Holdings, 780 F. Supp. 3d 870, 877–79 (D. Ariz. 2025); Hutchins II, 767 F. Supp. 3d at 924–26; Hutchins I, 737 F. Supp. 3d at 863; Donelson v. Meijer, Inc., No. 1:25-CV-1156, 2025 WL 3754241, at *2–5 (W.D. Mich. Dec. 29, 2025) (unpublished); Brewer v. All. Coal, LLC, No. 24-CV-406, 2025 WL 3527171, at *7–9 (N.D Okla. Dec. 9, 2025) (unpublished); Garner v. Northrop Grumman Corp., No. 1:25-CV-439, 2025 WL 3488657, at *3–5 (E.D. Va. Dec. 4, 2025) (unpublished); Brown v. Peco Foods, Inc., No. 3:25-CV-491, 2025 WL 3210857, at *4–8 (S.D. Miss. Nov. 14, 2025) (unpublished); Hernandez v. AT&T Servs., Inc., No. 2:25-CV-676, 2025 WL 3208360, at *3–4 (C.D. Cal. Nov. 14, 2025) (unpublished); del Bosque v. Coca-Cola Sw. Beverages LLC, No. 3:25-CV-1270, 2025 WL 3171326, at *4–5 (N.D. Tex. Nov. 13, 2025) (unpublished); Estay v. Ochsner Clinic Found., No. 25-507, 2025 WL 2644782, at *2–5 (E.D. La. Sept. 15, 2025) (unpublished); Dimou v. Thermo Fisher Sci. Inc. (Dimou II), No. 23-CV-1732, 2025 WL 2611240, at *4–7 (S.D. Cal. Sept. 9, 2025) (unpublished), appeal filed, No. 25-6364 (9th Cir. Oct. 9, 2025); Cano v. Home Depot, Inc., No. 1:24-CV-3793, 2025 WL 2589567, at *4–6 (N.D. Ga. Aug. 26, 2025)

9

(unpublished), appeal dismissed, 2025 WL 3700579 (11th Cir. Dec. 1, 2025); Barragan v. Honeywell Int'l Inc. (Barragan II), No. 24cv4529, 2025 WL 2383652, at *2–4 (D.N.J. Aug. 18, 2025) (unpublished), appeal filed, No. 25-2609 (3d Cir. Aug. 22, 2025) (unpublished); Fumich v. Novo Nordisk Inc., No. 24-9158, 2025 WL 2399134, at *6–7 (D.N.J. Aug. 19, 2025) (unpublished); Middleton v. Amentum Parent Holdings, LLC, No. 23-CV-2456, 2025 WL 2229959, at *11, 13–15 (D. Kan. Aug. 5, 2025) (unpublished); Cain v. Siemens Corp., No. 24-8730, 2025 WL 2172684, at *4–5 (D.N.J. July 31, 2025) (unpublished), appeal filed, No. 25-2564 (3d Cir. Aug. 19, 2025); McWashington v. Nordstrom, Inc., No. C24-1230, 2025 WL 1736765, at *12–15 (W.D. Wash. June 23, 2025) (unpublished); Steen v. Sonoco Prods. Co., No. 4:24-CV-3105, 2025 WL 2420725, at *4–5 (D.S.C. June 4, 2025) (unpublished); Bozzini v. Ferguson Enters. LLC, No. 22-CV-5667, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025) (unpublished); Madrigal v. Kaiser Found. Health Plan, Inc., No. 2:24-CV-5191, 2025 WL 1299002, at *2–5 (C.D. Cal. May 2, 2025) (unpublished); Barragan v. Honeywell Int'l Inc. (Barragan I), No. 24cv4529, 2024 WL 5165330, at *4–5 (D.N.J. Dec. 19, 2024) (unpublished); Dimou v. Thermo Fisher Sci. Inc. (Dimou I), No 23-CV-1732, 2024 WL 4508450, at *8–10 (S.D. Cal. Sept. 19, 2024) (unpublished); Naylor v. BAE Sys., Inc., No. 1:24-CV-536, 2024 WL 4112322, at *3–6 (E.D. Va. Sept. 5, 2024) (unpublished).

The court agrees with the weight of authority. First, Tillery does not allege that she received less than what the Plan promised. The duty of loyalty does not require that defendants offer more than that. See Loomis, 658 F.3d at 671; Fielder, 475 F.3d at 190; Wright, 360 F.3d at 1100; Foltz v. U.S. News & World Rep., Inc., 865 F.2d 364, 373 (D.C. Cir. 1989); Hutchins II, 767 F. Supp. 3d at 922; Polanco, 2025 WL 3003060, at *3–4; Faber v. Metro. Life Ins. Co., No. 08-CV-10588, 2009 WL 3415369, at *7 (S.D.N.Y. Oct. 23, 2009) (unpublished) ("[W]here a fiduciary complies

with a plan's lawful terms and provides the beneficiaries the benefits they were due under the plan, there is no violation of § 1104(a)'s exclusive purpose requirement." (quotation omitted)), aff'd, 648 F.3d 98 (2d Cir. 2011).

Second, Tillery assumes that if defendants used forfeitures to pay Plan expenses, then defendants also would have made additional contributions, resulting in a net gain for participants. This assumption fails because every Plan document made contributions discretionary (i.e., defendants were not required to make contributions at all). See [D.E. 12-1] 5–6; [D.E. 12-2] 14, 20; [D.E. 12-3] 14, 20 [D.E. 12-4] 14–15. Therefore, defendants could have used the forfeitures to pay for administrative expenses and opted not to make contributions in an amount equal to the forfeitures that they used to pay administrative expenses. See Polanco, 2025 WL 3003060, at *4. Thus, "every forfeited dollar allocated toward future employer contributions was a dollar Plan participants would not otherwise have in their accounts." Id.

Using forfeitures to "reduce" defendants' contributions provides a benefit to Plan participants through the contributions that participants receive. Tillery focuses on section 1104(a)(1)(A)(ii)'s charge that the fiduciary "defray[] reasonable expenses of administering the plan." See [D.E. 17] 11 (quoting 29 U.S.C. § 1104(a)(1)(A)(ii)). Tillery ignores that defendants used forfeitures to "provid[e] benefits to participants and their beneficiaries" in the form of employer contributions. 29 U.S.C. § 1104(a)(1)(A)(i). Thus, Tillery fails to plausibly allege a breach of the duty of loyalty.

The court rejects Tillery's arguments in opposition to this conclusion. First, Tillery's reliance on Rodriguez v. Inuit, Inc., 744 F. Supp. 3d 935 (N.D. Cal. 2024), Stewart v. Nextera Energy, Inc., No. 23-81314-CIV, 2025 WL 3098085 (S.D. Fla. Aug. 14, 2025) (unpublished), and Buescher v. North American Lighting, Inc., 791 F. Supp. 3d 873 (C.D. Ill. 2025), is misplaced. In

11

Rodriguez, the court found that the plaintiff "plausibly alleged that the Plan did not authorize the specific decisions made by Intuit with respect to the use of forfeited Matching Contributions." 744 F. Supp. 3d at 944. In Stewart, the plan's language concerning the use of forfeitures was "susceptible to multiple reasonable interpretations," among them that the defendant did not follow the plan's provisions. 2025 WL 3098085, at *7–8. In Buescher, the court construed the plaintiff's claim "as relating solely to the decision to use forfeitures to offset nonelective contributions in lieu of using them to defray Plan expenses," 791 F. Supp. 3d at 886, and the relevant plan document, unlike the WakeMed Retirement Savings Plan documents, defined nonelective contributions as a nondiscretionary contribution of three percent of a participant's eligible compensation. Id. at 878–79. Second, the other cases that Tillery cites are less persuasive and do not address the arguments that defendants raise in this case. See Becerra v. Bank of Am., No. 3:24-CV-921, 2025 WL 3032922, at *3–4 (W.D.N.C. Aug. 12, 2025) (unpublished); McManus v. Clorox Co., 4:23-CV-5325, 2025 WL 732087, at *2–6 (N.D. Cal. Mar. 3, 2025) (unpublished); Perez-Cruet v. Qualcomm Inc., No. 23-CV-1890, 2024 WL 2702207, at *7 (S.D. Cal. May 24, 2024) (unpublished); cf. Hutchins I, 737 F. Supp. 3d at 862 n.1 ("The Perez-Cruet court's analysis of whether a decision to reduce employer contributions rather than pay administrative costs . . . is conclusory . . . .").

Tillery also attempts to narrow her argument by stating that she does not seek a per se rule that "choosing to allocate forfeitures to employer contributions rather than plan expenses" always breaches the duty of loyalty. [D.E. 17] 13. Rather, according to Tillery, she alleges only that "when Plan documents confer discretion among several permissible uses, [d]efendants' failure to consider the option most beneficial to participants gives rise to an inference of disloyalty." Id. at 14. Tillery also argues that defendants acted disloyally by failing to spend all the forfeitures from a given year by December 31 of the year. See id. at 16. These arguments conflict with the above-described

12

ERISA principles and implausibly suggest that failing to provide Tillery a benefit greater than she is entitled to under the Plan creates an inference of disloyalty. See, e.g., Donelson, 2025 WL 3754241, at *2 ("[T]he better reading of ERISA is that a fiduciary's duties are only to provide beneficiaries the specific benefits promised in the plan."). Thus, the court dismisses Tillery's duty of loyalty claim.

2.

In claim two, Tillery alleges that defendants breached the duty of prudence by using forfeited funds to reduce their contributions. See Compl. at. ¶¶ 66–75. In claim three, Tillery alleges defendants breached the duty of prudence by failing to use all the forfeited funds by the end of each calendar year. See id. at ¶¶ 76–90.

ERISA's duty of prudence requires a fiduciary "to act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" Reetz, 74 F.4th at 182 (quoting 29 U.S.C. § 1104(a)(1)(B)). "Because the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." Dudenhoeffer, 573 U.S. at 425 (cleaned up); see Hughes v. Nw. Univ., 595 U.S. 170, 177 (2022); England v. DENSO Int'l Am. Inc., 136 F.4th 632, 636 (6th Cir. 2025). The duty of prudence "requires prudence, not prescience." DeBruyne v. Equitable Life Assurance Soc'y, 920 F.2d 457, 465 (7th Cir. 1990) (cleaned up).

In claim two, Tillery focuses on defendants' choice to use forfeitures to pay contributions and alleges that defendants "failed to engage in a reasoned and impartial decision-making process to determine that using the forfeited funds" "was in the best interest of the Plan's participants or was prudent." Compl. at ¶ 72; see id. at ¶¶ 33–40. Tillery's allegations fail to plausibly allege a

breach of the duty of prudence. Tillery's argument assumes an insufficient decisionmaking process because defendants did not use forfeitures to pay for Plan expenses. Stripped of conclusory language, Tillery alleges only that defendants (1) followed the Plan's language, and (2) provided the benefits required by the Plan to Tillery. These allegations do not plausibly suggest that defendants breached the duty of prudence. See, e.g., Hutchins II, 767 F. Supp. 3d at 926–27; Garner, 2025 WL 3488657, at *4 & n.8; Polanco, 2025 WL 3003060, at *8–9. In opposition to this conclusion, Tillery argues that her claim rests not on outcome, but on defendants' "process-less allocation of forfeitures to only one of the three options" during the relevant period and defendants' alleged failure to consider whether using forfeitures to pay Plan expenses would best serve Plan participants. See [D.E. 17] 20. Again, Tillery must plausibly allege a breach, and she does not. Tillery has "failed to allege facts that make plausible any claim that [d]efendants engaged in conduct that no reasonably prudent ERISA fiduciary would conclude was permissible and consistent with their fiduciary duties." Garner, 2025 WL 3488657, at *4. Thus, the court dismisses claim two.

Claim three focuses on defendants' failure to use all the forfeitures from one year by the end of that year. See Compl. at ¶¶ 36–40; 76–90. Defendants argue that the court should dismiss claim three because it is premised only on an article from the IRS website, with which defendants complied, and Tillery's allegations that forfeitures were unused at year's end does not plausibly allege a breach of the duty of prudence. See [D.E. 12] 28–30; [D.E. 18] 12–13. Tillery responds that the IRS article demonstrates that defendants did not act prudently, and that failing to allocate the forfeitures by the end of the year plausibly suggests imprudence. See [D.E. 17] 22–24.

The court rejects Tillery's argument and dismisses claim three. As for the parties' arguments concerning the IRS article, Tillery seizes on the article's statement that "[f]orfeitures

14

must be used or allocated in the plan year incurred." Retirement News for Employers, IRS 4 (Spring 2010), https://www.irs.gov/pub/irs-pdf/p4278.pdf. But the article also states, "For those plans that use forfeitures to reduce plan expenses or employer contributions, there should be plan language and administrative procedures to ensure that current year forfeitures will be used up promptly in the year in which they occurred or in appropriate situations no later than the immediately succeeding plan year." Id. at 5. Tillery alleges only that defendants did not use the forfeitures by the end of the Plan years, which does not mean that defendants failed to allocate the forfeitures at that time. See Compl. at ¶¶ 36–40, 76–90. And the article contradicts Tillery's theory because it acknowledges that forfeitures may be used to reduce employer contributions. See Retirement News for Employers, IRS 5 (Spring 2010), https://www.irs.gov/pub/irs-pdf/p4278.pdf.

Tillery's allegations that forfeiture balances existed do not plausibly suggest that defendants breached the duty of prudence. Tillery does not allege that defendants breached the relevant Plan terms for forfeitures, and each Plan document mandated that defendants restore forfeitures to participant accounts under certain conditions, which necessitates a forfeiture balance. See [D.E. 12-1] 5–6, 9; [D.E. 12-2] 8–11; [D.E. 12-3] 8–11; [D.E. 12-4] 8–9. At bottom, merely alleging that forfeiture balances existed does not give rise to an inference that defendants breached the duty of prudence. See, e.g., Twombly, 550 U.S. at 567; Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 597 (8th Cir. 2009) ("It is in this sort of situation—where there is a concrete, 'obvious alternative explanation' for the defendant's conduct—that a plaintiff may be required to plead additional facts tending to rule out the alternative." (quotation and citation omitted)); Donelson, 2025 WL 3754241, at *5–6. Thus, the court dismisses claim three.

15

## B.

In claim four, Tillery alleges a violation of ERISA's anti-inurement provision based on the use of forfeitures to reduce defendants' future contributions. See Compl. at ¶¶ 91–96. ERISA's anti-inurement provision provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). "The purpose of the anti-inurement provision, in common with ERISA's other fiduciary responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others." Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 23 (2004). Section 1103(c)(1) "focuses exclusively on whether fund assets were used to pay . . . benefits to plan participants," Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 442 (1999), and "demands only that plan assets be held for supplying benefits to plan participants." Raymond B. Yates, 541 U.S. at 22. "When a plaintiff does not allege that the defendant used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries, the defendant could not have violated the anti-inurement provision." Barragan I, 2024 WL 5165330, at *5–6; see Hughes Aircraft, 525 U.S. at 443. "Incidental benefits to the employer do not constitute a breach of the anti-inurement provision." Hernandez, 2025 WL 3208360, at *5.

Tillery alleges that defendants used Plan assets (i.e., forfeitures) to pay benefits to participants. Using forfeitures to pay plan participants benefits participants. See, e.g., Sievert, 780 F. Supp. 3d at 880; Steen, 2025 WL 2420725, at *6 ("[T]he reallocation of forfeited contributions within the Plan does not plausibly constitute an impermissible employer benefit under ERISA."). Doing so does not violate ERISA's anti-inurement provision. See Hughes

Aircraft, 525 U.S. at 443; Sievert, 780 F. Supp. 3d at 880; Hutchins I, 737 F. Supp. 3d at 864–67; Steen, 2025 WL 2420725, at *6.

In opposition, Tillery attempts to frame the issue as whether defendants used Plan assets to forgive defendants' debts and obtained a benefit from so doing. But this argument fails because defendants' contributions are discretionary under the Plan documents, see [D.E. 12-1] 5–6; [D.E. 12-2] 14, 20; [D.E. 12-3] 14, 20 [D.E. 12-4] 14–15, while a debt is a required payment. Tillery cites Holland ex rel. UMWA 1992 Benefit Plan v. Arch Coal, Inc., 947 F.3d 812 (D.C. Cir. 2020). In Holland, however, the employer sought to use a letter of credit from a successor entity to reduce the contributions that the plan document required it to make. See id. at 821. Tillery also cites Chao v. Malkani, 452 F.3d 290 (4th Cir. 2006), which held that the employer's requested payment from the plan for "the return of contributions that [the employer] had made many years in the past, dating as far back as 1982," violated the anti-inurement provision. Id. at 297. These cases do not support Tillery's argument because they "involved outstanding and unpaid amounts owed by the defendants." Hutchins I, 737 F. Supp. 3d at 867. Tillery's other cited cases are also distinguishable. See Brown v. Health Care & Ret. Corp. of Am., 25 F.3d 90, 93 (2d Cir. 1994) (rejecting employer's argument that it should be permitted to "set off overpayments it claims to have made since June 1989 against the payments" the district court ordered the employer to make); Bd. of Trs. of the M.M. & P. Health & Benefit Plan v. Grand River Navigation Co., Civ. Action No. GLR-20-677, 2021 WL 1215060, at *9–10 (D. Md. Mar. 30, 2021) (unpublished) (explaining that the anti-inurement provision prohibited "giving an employer a credit for past overpayments," in the context of an employer's counterclaims in excess of the amount it had requested from the plan's trustees); Operating Eng'rs Loc. 324 Health Care Plan v. Dalessandro Contracting Grp., LLC, No. 10-11256, 2012 WL 831758, at *5 (E.D. Mich. Mar. 12, 2012) (unpublished) (holding that an employer was

17

not entitled to an offset for overpayments when the overpayments were not due to a mistake of law or fact, the employer did not sue for restitution, and the employer did not establish a right to a refund under federal common law). Thus, the court dismisses claim four.

C.

In claim five, Tillery alleges that defendants violated 29 U.S.C. § 1106(a)(1) by "caus[ing] the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or a use of Plan assets by or for the benefit of a party in interest." Compl. at ¶ 102; see id. at ¶¶ 97–105. In claim six, Tillery alleges that defendants violated 29 U.S.C. § 1106(b)(1) by using forfeitures "as a substitute for future employer contributions to the Plan, thereby saving [WakeMed] millions of dollars in contribution expenses, [and] deal[ing] with the assets of the Plan in their own interest and for their own account." Id. at ¶ 109; see id. at ¶¶ 106–12.

Section 1106(a)(1) states

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

   (A) sale or exchange, or leasing, of any property between the plan and a party in interest;

   (B) lending of money or other extension of credit between the plan and a party in interest;

   (C) furnishing of goods, services, or facilities between the plan and a party in interest;

   (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

   (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a)(1)(A)–(E). Section 1106(b)(1) states, in relevant part, that a "fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own

18

account." Id. § 1106(b)(1)(A). "The transactions contemplated by [section] 1106 are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length, and which generally involve uses of plan assets that are potentially harmful to the plan." Garner, 2025 WL 3488657, at *6 (cleaned up); see Spink, 517 U.S. at 893; Barragan I, 2024 WL 5165330, at *7.

Defendants argue that the court should dismiss both claims because Tillery does not plausibly allege a transaction. See [D.E. 12] 33–34; [D.E. 18] 14. In response, Tillery argues that allocating forfeitures for future contributions is a transaction and that she plausibly alleges self-dealing. See [D.E. 17] 28–29.

The court dismisses claims five and six. Tillery does not plausibly allege that using forfeitures to fund contributions to participants is a transaction prohibited by section 1106. See, e.g., Sievert, 780 F. Supp. 3d at 880 (rejecting similar argument); Garner, 2025 WL 3488657, at *5–6 (same); Polanco, 2025 WL 3003060, at *9–11 (same); Steen, 2025 WL 2420725, at *6–7 (same). No assets left the Plan, and defendants paid contributions to participants. Thus, Tillery's prohibited transactions claims fail.

In claim seven, Tillery alleges a failure to monitor claim. See Compl at ¶¶ 113–21. Tillery's failure to monitor claim fails because Tillery's other ERISA claims fail. See, e.g., Enstrom v. SAS Inst., No. 5:24-CV-105, 2025 WL 685219, at *7 (E.D.N.C. Mar. 3, 2025) (unpublished) (collecting cases); Hutchins I, 737 F. Supp. 3d at 869. Thus, the court dismisses claim seven.

D.

Alternatively, Tillery's claims are barred to the extent they predate May 4, 2021, the date the court preliminarily approved a class action settlement in Conte v. WakeMed, No. 5:21-CV-190

19

(E.D.N.C.). In relevant part, the Conte settlement agreement defined the "Plaintiffs' Released Claims" as claims "[t]hat arise out of, relate in any way to, are based on, or have any connection with the Plan's management or administration, including but not limited to: . . . (b) fees, costs, or expenses charged to, paid, or reimbursed by the Plan or any Settlement Class Member . . . or (j) alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions." [D.E. 12-6] 10; see also Class Action Settlement Agreement at 9, Conte v. WakeMed, No. 5:21-CV-190 (E.D.N.C. Apr. 26, 2021), [D.E. 11-1]. On May 4, 2021, the court granted the parties' motion for preliminary approval of the class action settlement. See Order Granting Motion for Preliminary Approval of Class Action Settlement, Conte v. WakeMed, No. 5:21-CV-190 (E.D.N.C. May 4, 2021), [D.E. 12]. On January 10, 2022, the court entered a final order and judgment which stated that the class plaintiffs "fully, finally, and forever settle, release, relinquish, waive, and discharge" all defendants, including WakeMed, "from the Plaintiffs Released Claims." Final Order and Judgment at 4, Conte v. WakeMed, No. 5:21-CV-190 (E.D.N.C. May 4, 2021), [D.E. 35].

Defendants argue that Tillery's claims fail to the extent they predate the court's May 4, 2021 preliminary approval of the Conte settlement. See [D.E. 12] 34–36. Specifically, defendants contend that the settlement agreement's claim release, res judicata, and the court's order in Conte bar Tillery's claims "to the extent her claims are based on events that occurred on or before May 4, 2021." Id. at 35–36. Tillery responds that the Conte settlement release does not bar her claims because the claims have different factual predicates, and res judicata does not apply because her claims arise from a different set of transactions than the claims in Conte. See [D.E. 17] 29–33. Defendants reply that Tillery's claims fall into the Conte release and that res judicata applies because she could have brought her claims in this action in Conte. See [D.E. 18] 14–15.

Tillery disputes only whether her claims arise from the same factual predicate as the Conte settlement. See [D.E. 17] 29–32. Specifically, Tillery argues that Conte arose out of defendants' investment decisions and charging participants unreasonable and unnecessary expenses for administrating the Plan. See id. at 30. In this case, however, Tillery argues that "the gravamen of the complaint here is that [d]efendants failed to loyally and prudently reallocate forfeited funds . . . and instead always used forfeitures to reduce [c]ompany contributions." Id.

The identical factual predicate doctrine determines the preclusive effect of a class action settlement judgment. See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig., 91 F.4th 174, 182 (4th Cir. 2024); McAdams v. Robinson, 26 F.4th 149, 160 (4th Cir. 2022); Berry v. Schulman, 807 F.3d 600, 616 (4th Cir. 2015).[4] "Claims have an identical factual predicate when they depend upon the very same set of facts." McAdams, 26 F.4th at 160 (cleaned up); see Lumber Liquidators, 91 F.4th at 183; TBK Partners, Ltd. v. W. Union Corp., 675 F.2d 456, 460 (2d Cir. 1982). And "a class action settlement can dispose of unalleged claims relying on an identical factual predicate." McAdams, 26 F.4th at 160.

The Conte settlement judgment's factual predicate is the same as the predicate for Tillery's claims: the Plan's administration and expenses charged to participants, and claims for fiduciary breach arising out of the Plan's administration. See Compl. at ¶¶ 55–121; [D.E. 12-6] 10. Thus, Tillery's claims are barred to the extent they predate May 4, 2021.

---

[4] The parties treat res judicata and the identical factual predicate doctrine as distinct. See [D.E. 17] 29–32; [D.E. 18] 14–15. The Fourth Circuit in Lumber Liquidators did not refer at all to res judicata and applied only the identical factual predicate doctrine to determine the preclusive effect of a class action settlement judgment. See 91 F.4th at 182–86. Thus, the court analyzes only the identical factual predicate doctrine. See, e.g., 6 Newberg & Rubenstein on Class Actions § 18:19 (6th ed.) (describing the identical factual predicate doctrine as a method of applying res judicata to class action settlement judgments).

21

The court rejects Tillery's arguments in opposition. Of course, claims must depend on "the very same set of facts" to be precluded by the settlement judgment. Lumber Liquidators, 91 F.4th at 184 (quoting McAdams, 26 F.4th at 160). In Lumber Liquidators, however, the class representatives disclaimed bringing the at-issue claims. See id. at 185. Moreover, the claims that the district court held precluded by the class action settlement judgment were "distinctly outside the ambit of the class action proper." Id. (Wilkinson, J., concurring). The other cases that Tillery cites do not help her. See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 107–08 (2d Cir. 2005) (holding that the district court did not abuse its discretion when it approved a settlement agreement releasing claims which arose "out of the same factual predicate as settled class claims"); TBK Partners, 675 F.2d at 459–62 (holding that the district court did not err when it approved a class action settlement release of claims which "hinge[d] on the identical operative factual predicate"); Hesse v. Sprint Corp., 598 F.3d 581, 591, 590–92 (9th Cir. 2010) (holding that claims concerning Sprint's surcharge for a Washington state tax were not precluded by a class action settlement concerning Sprint's surcharges for the "costs of compliance with federal programs").

In Lumber Liquidators, the Fourth Circuit cited out-of-circuit cases which held that claims like Tillery's were precluded by a settlement judgment. See 91 F.4th at 183 n.3. For example, in Freeman v. MML Bay State Life Insurance, 445 F. App'x 577 (3d Cir. 2011) (unpublished), the Third Circuit held precluded a plaintiff's claims for recovery of insurance policy charges that concerned the "administration of policies and the calculation of policy charges," which occurred after the class period of a settled class action concerning "different . . . policies." Id. at 579. The Third Circuit rejected an argument indistinguishable from the one Tillery presses in this case. See id. ("The fact that the plaintiffs in [the settled class action] were challenging different . . . practices with respect to the policies does not mean that the factual predicates are different."). Likewise, in

22

Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53 (1st Cir. 2004), the settled class action concerned defective windows and doors manufactured by the defendant. See id. at 55. The First Circuit held precluded by the class action settlement judgment the plaintiff's claims for breach of a post-sale duty to warn because the class action settlement's release was "sufficiently broad to encompass the appellants' complaint and the allegations therein." Id. at 59; see id. at 57–58. Thus, in the alternative, the court holds that the Conte class action settlement judgment bars Tillery's claims predating May 4, 2021.

## III.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 11] and DISMISSES WITH PREJUDICE plaintiff's complaint.

SO ORDERED. This 15 day of January, 2026.

JAMES C. DEVER III
United States District Judge

23